George CHUPPE et al., Appellants,

v.

GULF IRON WORKS, Inc., Appellee.

No. 3324.

Court of Civil Appeals of Texas.

Eastland.

Sept. 20, 1957.

Rehearing Denied Oct. 25, 1957.

Lewright, Dyer & Redford, Nye & Cohn, Corpus Christi, for appellants.

Kleberg, Mobley, Lockett & Weil, Corpus Christi, for appellee.

GRISSOM, Chief Justice.

Eisenhauer was the general contractor for construction of a school building and Gulf Iron Works was a subcontractor. Gulf Iron Works' contract required it to build the porches, including their supports. The edge of the canopy covering the north porch extended past a beam. It was to be covered by a roofing material and facing

was to be placed along the edge by Eisenhauer. It was necessary for carpenters to go on the porches to perform such work. Supports, or braces, for canopies were installed by Gulf Iron Works at regular intervals on both the south and north porches, except at one corner on the north porch. Originally there was a plan for joinder with another building at this corner and no brace was called for there by the plan. The plan for an adjoining building was abandoned and Gulf knew this before it did any work on the porches. The iron workers for Gulf had apparently completed their work and had been gone several days when Chuppe and another carpenter were ordered by Dolezol, construction superintendent for Eisenhauer, to go on the canopies and do some carpenter work. To do this work the carpenters had to make certain measurements. Chuppe and the other carpenter finished their work on the south porch, went on the north porch and had started making measurements when Chuppe walked near the edge of the canopy where the brace was missing, the canopy bent under him, Chuppe lost his balance, fell to the ground and broke his feet. Chuppe sued the Gulf Iron Works for damages. He alleged Gulf was charged with the duty of installing braces under said canopy and knew that Eisenhauer's employees would be required to go on that portion of the canopy which was not supported by a brace and that the failure to support it with a brace at the place where he fell would probably result in injury to a carpenter. A jury found that the failure of Gulf to install said brace was not negligence but that Chuppe failed to keep a proper lookout for his own safety and such failure was a proximate cause of the accident. Judgment was rendered for the defendant and Chuppe and another have appealed.

Appellants' first point is that the court erred in permitting Dolezol to testify to his opinion of who was responsible for the accident. Gulf alleged Dolezol was negligent in ordering Chuppe to go on the canopy and that this was the sole cause of Chuppe's injury. Dolezol was called as a witness by Gulf. On cross examination by Chuppe he was asked whether he thought he (Dolezol) was the sole cause of the accident. He answered, "No, sir." There was no objection to either the question or answer. On re-direct examination Dolezol was asked by counsel for Gulf Iron Works whether he thought the cause of the accident was Chuppe's failure to watch where he was going. Appellants objected to the witness testifying to the cause of the accident because that was an ultimate issue in the case, was hearsay and invaded the province of the jury. The objection was overruled, apparently on the theory that it became admissible because plaintiff had asked Dolezol whether he thought he was the sole cause of the accident and the witness had answered, "No, sir." Whereupon, Dolezol was again asked by defendant whether he thought the cause of the accident was Chuppe's failure to watch where he was going. Dolezol then answered that he thought both Chuppe and Gulf Iron Works were negligent; that he thought Gulf Iron Works was negligent in leaving off the brace and Chuppe was negligent in not watching where he was going.

The court erred in permitting the witness to so testify. In 2 McCormick and Ray, Texas Law of Evidence, 281, it is stated that the Texas courts have usually excluded opinion as to carelessness and prudence since they are mixed questions of law and fact and such testimony constitutes an invasion of the province of the jury.

"—a witness may not ordinarily express his opinion as to the cause of a particular accident or occurrence." 19 Tex.Jur. 18.

"The opinion of an expert on the question of due care or negligence is doubly objectionable as involving a preliminary question of law and as an invasion of the province of the jury to determine ultimate issues, and is therefore inadmissible." 19 Tex.Jur. 34, 35.

"Thus title or want of title, mental capacity or lack of it, fraud or good faith, due care or negligence, are all conclusions which the law draws from certain facts; and when the jury seek to determine—whether a party used due care, the ultimate question for determination is a mixed question of law and fact." 19 Tex.Jur. 104, 105.

In Texas & P. R. Co. v. Felker, 40 Tex. Civ.App. 604, 90 S.W. 530, 531, the court said:

"We believe no case can be cited where it is held that a witness may testify that an act does or does not constitute negligence."

In Houston & T. C. R. Co. v. Roberts, 101 Tex. 418, 108 S.W. 808, 810, our Supreme Court held that an experienced cattleman could not testify as to what he considered a reasonable time within which to transport cattle if done with ordinary care and diligence because it was an opinion on a mixed question of law and fact. In Carroll v. Magnolia Petroleum Company, 5 Cir., 223 F.2d 657, it was held reversible error for an expert witness to testify as to his opinion of the cause of an accident. The following authorities are to the same effect: San Antonio Brewing Ass'n v. Wolfshohl, Tex.Civ.App., 155 S.W. 644, 645, (Writ Ref.); Houston & T. C. R. Co. v. Rippetoe, Tex.Civ.App., 64 S.W. 1016, 1018; Carter v. Lindeman, Tex.Civ.App., 111 S.W.2d 318, 320; Banker v. McLaughlin, Tex.Civ.App., 200 S.W.2d 699, 703, affirmed 146 Tex. 434, 208 S.W.2d 843, 8 A.L.R.2d 1231; Campbell v. La Due, Tex. Civ.App., 273 S.W.2d 450, 453; Missouri, K. & T. Ry. Co. of Texas v. Grimes, Tex. Civ.App., 196 S.W. 691, 694; St. Louis & S. F. R. Co. v. Nelson, 20 Tex.Civ.App. 536, 49 S.W. 710, 713; Dallas Hotel Co. v. McCue, Tex.Civ.App., 25 S.W.2d 902, 906; International & G. N. R. Co. v. Kuehn, 11 Tex.Civ.App. 21, 31 S.W. 322, 324; Commercial Union Assurance Co., Limited of London, England v. Everidge, Tex.Civ. App., 72 S.W.2d 311; St. Louis, B. & M. Ry. Co. v. Griffin, Tex.Civ.App., 56 S.W.2d 482, 483 and Wichita Valley Ry. Co. v. Turbeville, Tex.Civ.App., 269 S.W. 498, 503.

In answer to Chuppe's contention that the introduction of said testimony constituted reversible error Gulf Iron Works calls attention to the fact that Chuppe alleged Gulf was negligent in failing to install the brace and in failing to warn Chuppe of its absence; that Gulf had alleged it had complied with the specifications and that the sole cause of Chuppe's injury was the negligence of Dolezol in sending him to work on the roof without telling him about the missing brace. Gulf says that, obviously, it was to Chuppe's benefit to overcome such defenses by eliciting from the witness Moore that he was not putting the blame on Dolezol and eliciting from Dolezol his opinion that he was not the sole cause of Chuppe's injury; that it was only after Chuppe had gone into the matter of causation and elicited said opinions as to the cause of the accident that Gulf, on re-direct examination, questioned Dolezol about his opinion. It concludes that if said questions and answers constituted error they were invited by appellants. This conclusion cannot be sustained. The fact that inadmissible testimony of one party is admitted without objection does not authorize the other party, by way of rebuttal, to introduce inadmissible testimony over timely and proper objection. Dallas Railway & Terminal Co. v. Bailey, 151 Tex. 359, 250 S.W.2d 379, 382 and Missouri-Kansas-Texas Railroad Co. v. McFerrin, Tex., 291 S.W.2d 931, 944.

Gulf further says that if such action constituted error, nevertheless, it was not sufficient to require a reversal because there was other evidence that Chuppe was negligent and the verdict shows conclusively that the jury did not give controlling weight to Dolezol's opinion because it found, contrary to Dolezol's opinion, that Gulf was not negligent. In support thereof Gulf cites Dallas Railway & Terminal Co. v. Bailey, supra; Lynch Oil Company v. Shepard, Tex.Civ.App., 242 S.W.2d 217

(Writ Ref.); Shelton v. Belknap, Tex., 282 S.W.2d 682; Rowan & Hope v. Valadez, Tex.Civ.App., 258 S.W.2d 395 (RNRE) and Memphis Cotton Oil Company v. Tolbert, Tex.Civ.App., 171 S.W. 309 (Writ Ref.). We shall dispose of the last contention in connection with our disposition of the remaining points.

■ Appellants' second point is that the court erred in overruling their motion for a new trial, which alleged jury misconduct. Appellants alleged that the juror Crum on voir dire examination testified he had no personal knowledge of the facts of the case but that, contrary to his testimony, his employer, Alamo Iron Works, had bid on this job and Crum then knew that the plan for the iron work did not call for installation of the missing brace and, while the jury was deliberating, Mr. Crum told them that when anything was omitted from the blueprints, such as the brace, it was up to the architect to make the decision as to what should be done; that one of the jurors mentioned that Chuppe had been paid workmen's compensation insurance; that one juror told the others that if judgment were rendered for a large amount it would cause insurance rates to go up and the public would have to pay for it; that one juror stated to the others during their deliberation that it was not the duty of an iron worker to warn a carpenter of the missing brace; that "he knew" it was the duty of each craft to warn its own members.

It was undisputed that the plan did not call for a brace at the point where it was missing and where Chuppe fell. Crum admitted that he told the other jurors that when something was omitted from the plan, such as the brace, it was up to the architect to decide what should be done. We think all other grounds alleged were disputed and the court had the right to conclude that other alleged acts of misconduct did not occur. Mr. J. K. Moore, superintendent on this job for Gulf Iron Works, was called under the adverse party rule as a witness by plaintiff. He testified, in substance, that

Gulf Iron Works could not install the brace because it was not called for in the plan under which Gulf was doing the iron work until the architect gave them the "go-ahead" and told them how he wanted that corner finished; that he did not know what type of brace would be put at that corner; that it was just one of those things that you had to work out when you got to it; that the plan showed the end of the north porch where Chuppe fell went into another building; that no support was placed at this corner because of lack of information as to the way the brace was to be placed; that the brace was not installed at the time Gulf did the other iron work because Gulf's superintendent "didn't know how he (the architect) wanted to make the turn around the corner"; that at the time Gulf installed the braces under the canopy he didn't know how they wanted the "facia boards on the short end". Mr. Dolezol, superintendent for the general contractor, testified that it was probably true that the missing brace was not installed because the architect didn't give Gulf the angle for setting it. Appellee concludes that the evidence was undisputed that the architect had to tell Gulf how he wanted the corner finished before Gulf could install the missing brace. We do not think this is accurate. Moore was called as an adverse witness and plaintiff was not bound by his testimony. The testimony of said witness was indefinite, was opinion evidence and not conclusive. Juror Crum, who was employed by a rival iron works, testified on the motion for a new trial that he stated to the other jurors during their deliberation that when the brace was missing from the plans it was up to the architect to decide what should be done and that this information was based on his personal experience and knowledge of the business; that he told the jurors that, from his experience, he knew Gulf wasn't supposed to put the brace there because it wasn't called for in the specifications; that the reason he made that statement was that some of the jurors asked him to help them because they were not familiar with such

things and that he was asked about it by the other jurors because of his superior knowledge and experience in the iron business. Appellee says that this was not included in appellants' motion for a new trial; that there was no allegation that Crum or any other juror became an expert witness and recited his personal experience, other than the allegations that Crum told the jury that he had seen the plan and knew that it did not call for the brace and that, under such a situation, it was up to the architect to decide what should be done. We believe the question was presented. This was a vital issue in the case. The jurors could not find that Gulf was guilty of negligence in failing to install the brace unless they believed it had the duty to install it. A member of the jury, employed by a rival iron works, was called upon by the other jurors to advise them on this question because of his knowledge and experience in the same business in which Gulf was engaged when it did the iron work on the porches and left the job without installing the brace. This juror, in effect, told them that, based on his knowledge and experience in the business in which Gulf Iron Works was then engaged, it was not the duty of Gulf to install the missing brace because it was not called for in the plan and Gulf could not have installed said brace until it was instructed how to do it by the architect. This was vital testimony on a controlling issue, that is, whether or not Gulf was negligent in leaving the job with all their work apparently done except installation of one brace and without a warning to those that they must have known would go on the porch to do carpenter work. There was testimony that Gulf had been informed that carpenters were about to be sent on the roof and that the brace should be installed and that Gulf had promised to promptly install it but had failed to do so. We conclude that this part of the alleged misconduct of the jury was conclusively established. We believe, from a study of the record, that it was an error reasonably calculated to cause, and that it

probably did cause, the rendition of an improper verdict.

■ Appellants' third point is that the court erred in permitting appellee to question Chuppe with reference to the cause of a previous accident in which Chuppe was injured. He was asked if it were not a fact that his previous injury was caused by trying to support himself on a board that he thought was nailed but which, in fact, was loose. Such questions were objected to on the ground that "how he got hurt" in the previous accident was irrelevant and immaterial. The objection was overruled. He was then asked if he did not grab a two by four that he thought was nailed but which, in fact, was not nailed. Chuppe testified that he thought the board he grabbed was nailed but that it was not. Evidence as to what caused his previous injury was not relevant to any issue in this case. The fact that he grabbed a board which he thought was fastened by nails but which was actually lying loose and that as a result he fell and was injured certainly could have caused the jury to believe that Chuppe was habitually negligent and that he was, therefore, probably negligent in walking near the edge of the roof where the brace was missing. He was further asked if he hadn't been warned several times about his "careless habits; the careless manner in which you got around and performed your job?"

Evidence as to the cause of Chuppe's previous injury was not admissible. This and questions indicating Chuppe was habitually careless in performing his work as a carpenter, under the circumstances, were reasonably calculated to cause the jury to find, as it did, that he was negligent on the occasion in question. It is evident that the errors in admitting such evidence and the testimony of Dolezol that, in his opinion, Chuppe was negligent, considered in connection with the improper conduct of the juror Crum in advising his fellow jurors that, based on his knowledge and experience in the iron business, Gulf

was not negligent in failing to install the brace or give a warning of its absence, because Gulf couldn't do anything until directed by the architect were reasonably calculated to cause the jury to find, as it did, that Chuppe was negligent. We have considered these errors in a study of the entire record and are forced to the conclusion that they probably caused rendition of an improper judgment. The judgment is, therefore, reversed and the cause remanded.