**Terry W. STINSON and Johnnie Stinson, His Wife, Appellants,**

v.

**ARKLA ENERGY RESOURCES, a Division of Arkla, Inc., Appellee.**

**No. 6–91–018–CV.**

Court of Appeals of Texas, Texarkana.

Jan. 28, 1992.

Richard N. Dodson, Texarkana, for appellants.

R. David Freeze, Smith, Stroud, McClerkin, Dunn & Nutter, Texarkana, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

Terry and Johnnie Stinson appeal the trial court's judgment on a jury verdict in this condemnation proceeding. The critical

issue on appeal is whether written reports concerning approximately 200 gas pipeline failures should have been admitted as evidence. We determine that the trial court did not err in its evidentiary rulings and affirm the judgment.

Arkla Energy Resources, a division of Arkla, Inc., instituted condemnation proceedings for an approximately two-acre strip of land running across the Stinsons' land for the purpose of a pipeline. During trial, the Stinsons sought to introduce approximately 200 Department of Transportation reports of pipeline failures, which were filed by Arkla when some type of failure occurred in their pipeline system. These reports were from failures that occurred from 1970 to 1988, inclusive.[1] The Stinsons were allowed to introduce only those reports concerning pipelines similar to the one Arkla was installing across the Stinsons' land. On appeal, the Stinsons maintain that the reports of all 200 gas pipeline failures were initially admissible. Alternatively, they claim that, even if they were not originally admissible, Arkla opened the door for their admissibility when Bill Kamphius, Jr., an engineering expert testifying on behalf of Arkla, testified that gas pipelines are the safest form of gas transportation.

■ In a suit to determine the value of condemned land, fear of the proposed pipeline may be admissible. Fear in the minds of the buying public on the date of the taking is relevant to the proof of damages when the following elements appear: (1) that there is a basis in reason or experience for the fear; (2) that such fear enters into the calculation of persons who deal in the buying and selling of similar property; and (3) depreciation of market value because of the existence of such fear. *Heddin v. Delhi Gas Pipeline Co.*, 522 S.W.2d 886, 889 (Tex.1975); *Delhi Gas Pipeline Corp. v. Gibbs*, 643 S.W.2d 492, 493 (Tex.App.–Tyler 1982, writ ref'd n.r.e.); *Delhi Gas Pipeline Co. v. Mangum*, 507 S.W.2d 631, 635 (Tex. Civ.App.–Tyler 1974, no writ).

■ To establish that there is a basis in reason or experience for the fear, it is incumbent upon a landowner to show either that an actual danger forming the basis of such fear exists or that the fear is reasonable, whether or not it is based upon actual experience. Reduction in market value due to fear of an unfounded danger is not recoverable. *Heddin v. Delhi Gas Pipeline Co.*, 522 S.W.2d at 888. The Stinsons sought to introduce the 200 incident reports apparently to show a reasonable basis for fear in the minds of the buying public. However, the Stinsons neglected to adduce evidence that there was any fear in the minds of the buying public.[2] There was no testimony which showed that the community or the buying public feared the pipelines; the Stinsons' own expert testified that he did not know of anyone moving because of the pipeline; there was no evidence that any fear was taken into consideration by the buying and selling public; and the Stinsons did not show that fear of pipelines was taken into consideration by the buying public. Further, there was no evidence of diminishment of land values because of a fear. There was no testimony regarding the amount of reduction in value which this land would suffer because of the pipeline.

The land the Stinsons owned already had pipelines running across it. The land previously condemned for these other pipelines could also be used for a high-pressure line. The requirements, as set out in *Heddin*,

1. When there is a pipeline failure that results in damage to person or property, Arkla is required to file a written report with the United States Department of Transportation, which is called a Department of Transportation Incident Report. These reports are required for all failures, regardless of the type or the circumstances surrounding the failure.

2. Johnnie Stinson testified that the pipeline scared her, and Terry Stinson stated that the pipeline made him nervous because of the pressure in the line. He testified that potential buyers might fear this also. Lloyd Click, a real estate expert testifying on behalf of the Stinsons, opined that a pipeline the size of the one under the Stinsons' land could cause fear in the minds of the general public. However, there is no evidence to show that there actually was fear in the minds of the buying public on the date of the taking of the property. Such a showing is required. *Heddin v. Delhi Gas Pipeline Co.*, 522 S.W.2d 886, 888 (Tex.1975).

were not met, and the exclusion of the reports of 200 pipeline failures as the basis for any fear on the part of the buying public was proper.

The 200 reports of various pipeline failures were also properly excluded because they were not shown to be of the same or similar characteristics as the pipeline traversing the Stinsons' land. The trial court allowed the Stinsons to introduce those reports which dealt with pipelines having the same or similar characteristics. Generally, when the proof fails to show that two pipelines are generally similar in their essential characteristics, then proof of an explosion on one line offers no reasonable basis for depreciating the market value of the land housing a dissimilar line. *Delhi Gas Pipeline Corp. v. Gibbs*, 643 S.W.2d at 495. Thus, the trial court properly excluded the reports of failures of pipelines under dissimilar circumstances.

The Stinsons also contend that Arkla opened the door for evidence of all other pipeline accidents when Kamphius testified as to the safety of pipelines in general. After the trial court ruled that the reports of dissimilar pipeline failures were inadmissible, Kamphius testified that pipeline transportation is the safest form of gas transportation and that the likelihood of a pipeline incident is minimal. At that point, the Stinsons once again attempted to place in evidence all 200 reports of the pipeline failures, claiming that Arkla had "opened the door" allowing them to put on the reports in rebuttal. A trial court may allow otherwise inadmissible evidence to rebut testimony. For example, collateral benefits received by an injured claimant, although otherwise inadmissible, may be admitted to rebut testimony of severe financial hardship. *Mundy v. Shippers, Inc.*, 783 S.W.2d 743, 745 (Tex.App.–Houston [14th Dist.] 1990, writ denied). However, a ruling on preliminary questions such as the admissibility of evidence is a matter within the trial court's discretion. *See Mundy v. Shippers, Inc.*, 783 S.W.2d at 745; TEX.R.CIV.EVID. 104(a). Under the present circumstances, the Stinsons show no abuse of discretion on the part of the trial court in ruling on the admissibility of the reports of dissimilar pipeline failures.

The trial court's judgment is affirmed.

CORNELIUS, Chief Justice, concurring.

I write separately to express my conclusion that it was error to exclude evidence of other pipeline explosions. Because, however, I find the error to be harmless, I concur in the judgment.

Public knowledge and fear of pipeline explosions is a proper element of damages in a condemnation suit because that fear adversely affects the market value of the land. Public records of pipeline accidents are relevant to show public knowledge. Proof of such fear is proper if it is shown that (1) there is a basis in reason or experience for the fear, (2) the fear enters into the calculations of persons who deal in buying and selling similar property, and (3) depreciation of market value occurs because of the fear. *Heddin v. Delhi Gas Pipeline Co.*, 522 S.W.2d 886 (Tex.1975).

It is not necessary that the other pipelines involved in accidents be similar to the one being placed on the condemned property. That kind of showing is necessary only when it is sought to prove that the pipeline being installed is likely to cause *actual danger*. *Heddin v. Delhi Gas Pipeline Co., supra*. Obviously, other explosions are not relevant to *actual danger* unless the lines are similar. That is not the case, however, when one is proving fear in the mind of the buying public. The public does not know whether pipelines are similar or not—they simply fear pipelines in general and they reflect that fear by downgrading the market value of land which contains them. *Heddin v. Delhi Gas Pipeline Co.* does not hold that similarity is necessary in proving public fear, and *Delhi Gas Pipeline Corp. v. Gibbs*, 643 S.W.2d 492 (Tex.App.–Tyler 1982, writ ref'd n.r.e.), which did so hold, misinterpreted and erroneously relied on *Heddin* in doing so.

Stinson did produce evidence that the public was afraid of pipelines and that the fear adversely affected the land's market value. Witness Click testified that people have a "distinct fear" of being close to a

pipeline, that he took that in consideration in his calculations of the market value of the property involved in this suit, and that newspaper reports of pipeline failures directly affect the land's market value. Johnnie May Stinson testified that anyone would be scared of the pipeline and that such fear would affect the land's susceptibility to development. Terry Stinson testified that the line made him nervous and that the danger of the line had a direct impact on the use of the property.

Nevertheless, I cannot conclude that the exclusion of the Department of Transportation reports of other pipeline accidents caused the rendition of an improper verdict. TEX. R. APP. P. 81(b)(1). Evidence of thirteen accidents involving similar pipelines was admitted into evidence, and there was ample testimony that the buying public's fear of pipeline accidents adversely affected the market value. I cannot conclude that the exclusion of the additional accidents caused the jury to disregard the other evidence showing an adverse effect on the market value. Thus, I concur in the affirmance of the judgment on this ground.

GRANT, Justice, concurring.

I concur with the results only of the majority opinion. I fully concur with the concurring opinion but would also add the following reservations concerning the majority opinion.

I do not find that TEX.R.CIV.EVID. 104(a) is applicable, nor do I find that it establishes a discretionary standard for the admissibility of evidence. Rule 104 deals only with preliminary matters, to which the Rules of Evidence are not applicable. The admissibility of evidence frequently will depend upon establishing a predicate, qualifying a witness, meeting a condition, or justifying reliance on a privilege. Rule 104 addresses these questions. *See* H. Wendorf, D. Schlueter, R. Barton, TEXAS RULES OF EVIDENCE MANUAL, at I–37 (3rd ed. 1991). The issue in the present case relates to a matter of substantive evidence.

In *Gee v. Liberty Mutual Fire Insurance Co.,* 765 S.W.2d 394 (Tex.1989), the Texas Supreme Court set forth the standard for obtaining a reversal of a judgment based upon error of the trial court in admission or exclusion of evidence: there must be a showing (1) that the trial court did in fact commit error, and (2) that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment, *citing Bridges v. City of Richardson,* 163 Tex. 292, 354 S.W.2d 366, 368 (1962), and TEX.R.APP.P. 81(b).